The Honorable, the judges of the United States Court of Appeals for the Fourth Circuit. Please be seated and we'll hear argument in our last case, United States v. Helton. Mr. Compton. Good morning and may it please the court. My name is Nicholas Compton and I represent the appellant in this case, Anthony Helton. I've reserved seven minutes for rebuttal. Mr. Helton appeals the district court's denial of his motion to dismiss the indictment in this case. Mr. Helton was charged in the Northern District of West Virginia with failing to register or update his sex offender registration. Now the government contends that Mr. Helton is required to register as a sex offender under SORNA, the Sex Offender Registration Notification Act, based on a prior conviction in South Carolina for voyeurism. Mr. Helton asserts that his voyeurism conviction does not qualify as a sex offense under SORNA. Sex offense is defined under SORNA in 34 U.S.C. 20911, subparagraph 5. And the government has conceded and the district court as well has adopted. And the parties agree, frankly, that it is subparagraph 5A1 that applies to this case, no other section. And that is a criminal offense that has an element involving a sexual act or sexual contact with another. So what we have here is a conflict. South Carolina says this is a sexual crime, and SORNA's definition seems to say otherwise. That's correct, Your Honor. That's the bottom line? That is the bottom line, Your Honor. And the courts asked for a supplemental briefing here, and I think the... Why do you say that SORNA says otherwise? Well, because, Your Honor, again, the government has conceded that it's just that first part, the sex act or sexual contact with another. This court has found, we believe in the Bridges case, that the court is to refer to the SMART guidelines for definitions of what constitutes sexual act or sexual contact with another. Those, again, we believe the court has found under Bridges that those have the force and effect of law. When you look at those SMART guidelines, they define sexual act as involving... Well, that's what you put in your brief, but they say those sexual acts shall include. Yes, sir, they do. I mean, you kind of had in between your quotes, is defined as, and that's not really what the guidelines do. It doesn't, as I read them, it looks like they provide those as an example. And I grant that they provide an example, but they don't indicate that it's exclusive, do they? They don't indicate that it's exclusive, Your Honor, but they also cross-reference to the definitions under 18 U.S.C., which involve the same acts in a separate section where they're talking about juvenile, what constitutes a juvenile conviction. Again, they refer to the same types of offenses, the touching offenses. It seems to me, I mean, Congress drafted this statute, and when they drafted subsection 1, they had an opportunity to refer to that same Title 18 definition of conduct. And then they leave to the Attorney General the ability to fill in the gaps, so to speak, and they have the opportunity to say sexual acts equals what we're talking about there. And so neither Congress nor the Attorney General has gone as far as you're saying in the two opportunities they've had to, you know, tie sexual act to the 2246, you know, I think that's right, definition. And in neither case have they done so. I agree that they didn't use the word equals, but I think if you read the SMART guidelines in the context, they just for that first paragraph, sexual act and sexual contact, they refer to just touching offenses. I'm sorry to interrupt you, but doesn't that reading also, you know, effectively make sexual act and sexual contact, doesn't that read out sexual act? I mean, in subsection 1, you have sexual act and sexual contact. Yes, sir. And now you're referring to a definition that refers, you know, pretty clearly to sexual contact. And it seems to me that reading makes sexual act, as used in subsection 1, you know, superfluous and, you know, without any effect. Well, I disagree, Your Honor, because I think sexual act, again, in the SMART guidelines and in 2246, talks about penetration. It goes beyond just we referred in our brief to touching offenses, but we use that as a general, because they do both involve touching, but sexual act goes beyond just touching. It goes to penetration, either of the genital area or mouth to genitals and so forth. So sexual act goes beyond just a touching of the sexual body part. Is your argument dependent on the court reading the SMART guidelines as terms of exclusion, not just terms of inclusion? It seems like to me that we have to read it that way in order for you to prevail. Well, I think that's correct, Your Honor, and I think the SMART guidelines make it, I think they refer to that as a fact. They, it's at page 38,045, where they say the term sex offense is not used to refer to any and all crimes of a sexual nature, but rather to those covered by the definition of sex offense appearing in SORNA. And so I think the SMART guidelines themselves recognize that just because an offense has a sexual aspect to it, which is what the government, I think, is asking the court to adopt, that any offense that has any kind of sexual nature to it is hence a sexual act. And that is not, I believe, what the SMART guidelines ask us to do. Furthermore, I think we get, when we talk about an offense or say that, well, the SMART, the SORNA applies to any offense that has a sexual nature to it, and then we say, well, we don't define that anywhere. Congress left that to the Attorney General to do, and I think they've done it in these SMART guidelines. But if we say, well, it's not defined here, here's just some things that might qualify, I think that leaves the door open. How would an individual know if what they're doing is violating SORNA such that they have to register? Are you making a constitutional vagueness argument now? I think if the court were to adopt the government's position that the SORNA is anything that is of a sexual nature or has any aspect of sex to it, then, yes, I think that we get into a scenario where we have a vagueness issue here. Well, let me ask you this. I mean, so much was conceded to Judge Agee just a moment ago about the guideline interpretation. Even if the definition is not limiting, why can't we say voyeurism is not a sexual act? Why can't we say that? I think you can say that. I think we want to say that voyeurism is not a sexual act, as that term is defined under the SMART guidelines, because you can violate the voyeurism statute in South Carolina, as Mr. Helton did, by simply viewing an adult. And by viewing an adult... Your argument here, again, is dependent upon reading the SMART guidelines as exclusive, as the sole universe of what would constitute a sex act or sex conduct. With regard to that section, yes, Your Honor. The government, in their response, was suggesting that, well, that would mean that SORNA would prevent any offense that doesn't involve touching. We're not saying that. For example, in other sections, SORNA prohibits you were required to register if you have a child porn conviction. Were there provisions of SORNA where Congress did incorporate the 2246 definitions? I think there are some sections where they make reference to it, Your Honor. And it's slipping my mind right now. I recall reviewing that. But I don't believe that they specifically for this section define sex act and sex offense. It's obvious it wasn't defined in the statute, which is why we have the guidelines. But if we assume, just for argument, that the guidelines are not exclusive, so that there are some other areas that could possibly fit under the statute, if you look at this South Carolina offense, it includes an element of for the purpose of arousing or gratifying sexual desire of any person. So with that as a required element, why wouldn't that just under the dictionary definitions of sexual act or sexual conduct, why wouldn't that qualify? Because this is not a situation, Your Honor, where I believe the court needs to refer to a standard dictionary definition. I think that's what the district court and the government, their position is. But because Congress left that open and then directed the attorney general to define it, we have the definitions in the SMART guidelines. And again, the SMART guidelines say that just because an offense has some element of a sexual nature to it, doesn't mean that that qualifies somebody to have to register under SORNA. And in this instance, I know the court has looked at that element, but the court I think also should look at the other element, which again, as the government concedes this is an indivisible statute, that the other element which allows a defendant to violate the statute by viewing, photographing, recording, and so on. And so if we look at the totality here, you can violate the South Carolina statute by, again, simply looking at a clothed adult. So let me follow up on that. Is it your position that you can violate the South Carolina statute without addressing the element of sexual arousal that, Judge A, you referred to? No, I think it requires a sexual arousal. But of the person doing the viewing. I think you can violate this statute by looking, the key here for South Carolina was they were trying to prohibit, you know, looking in somebody's window and getting a sexual kick out of that. But that doesn't, that in and of itself is not what SORNA, in our opinion, is seeking to preclude under that first section of the definition. Based on your position that 2246 is the definition of sexual act. Yes, sir. And that's because, and I see my time is expiring, that is because the SMART guidelines not only in multiple sections refer to sex act, penetration, sexual contact, touching of the genitals, but also reference back to the 2246 definitions in 18 U.S.C. Thank you. You've got some time left on rebuttal. Thank you. So the clerk was kind enough to try to school me on pronouncing your name. Umps-Bottiger? Yes. Thank you. I got it. Okay. All right. We're glad to hear from you. Good morning, Your Honors. My name is Laura Umps-Bottiger, and I represent the United States in this matter. And this court should affirm the district court's holding finding that Anthony Helton was a sex offender required to register under SORNA for three reasons. And the first reason would be that nothing in SORNA's statutory text or the legislative history suggests that Congress intended for sexual act under SORNA to be limited to this physical contact with another person as required under Section 2246. The second reason would be that the SMART guidelines do not limit sexual act to require a touching or to be limited by 2246. And finally, under Section 209-115-A1, utilizing the categorical approach South Carolina's voyeurism is a sexual act for SORNA purposes. Now, this court asked some questions about the SMART guidelines, and I think the parties agree that the SMART guidelines do have to be referenced and that they would be entitled to Chevron deference in this case. Where we diverge is how they apply. The United States believes that the way the SMART guidelines defining sexual act or sexual contact for SORNA purposes is not limiting. It uses such broad words like includes and covers to describe these sex offenses. And then it does reference 18 U.S.C. 2246, but it states to compare. It doesn't say that it is, that it equals, that it's defined by this section. Therefore, the United States position is that the reference in the SMART guidelines is simply the baseline here. It's not a limit. It's at a minimum, these type of offenses should be included for SORNA purposes. Tell me what you meant, the compare reference. I'm curious. I noted that. What's your position as to the significance of the compare language or compare signal? Yes, with the use of the compare signal, the way the United States interprets that is that it's simply a reference, that this is the baseline where they were deriving that language of how they set that minimum for what is at least a sexual act or sexual offense, to make it clear and to provide assistance when trying to interpret this language. And I do believe that they are applicable, but they don't resolve the issue in this case. Perhaps it would resolve the issue in many cases simply to refer to that baseline definition. But, unfortunately, the SMART guidelines did not set the outer limits of what a sexual act is. And I believe that that's what's brought us here today, is where are those outer limits for sexual act. And since the guidelines does not limit that, referring back to what a sexual act is in the SORNA statute, the plain meaning of what an act is, an act is simply to do something. And taking the sexual contact, it's doing of something with a sexual purpose. And the South Carolina voyeurism conviction that Mr. Halton suffered requires that. Indeed, he pled guilty to a crime that can only be- It requires what now, the South Carolina statute? It requires an act that must be sexual in nature, which is sexual act. So the act in Mr. Halton's case was viewing. And he had to be convicted of the sexual act part by admitting his guilt that he did that viewing with that sexual purpose or for sexual arousal or gratification. That is the only way he could be convicted under that statute at 470B1. It specifically required that element. Referring to the joint appendix, looking at that sentencing sheet, he actually waived presentment to a grand jury for that section of B1 and pled guilty. That requires that he must have admitted and pled guilty to having that requisite sexual intent. Why should we allow the intent of the act to define the act? I believe that that's how you get the sexual element of it. And perhaps it's not always going to be as black and white, and there's going to be some gray area. But the sexual component of it, for example, video voyeurism, if you would refer to that, and look, that requires videoing might not always be sexual, but it does require the sexual intent for video voyeurism, which is the defined offense under the United States Code and which also is encapsulated under South Carolina statute. So SORNA has included some registrable offenses where the intent is what necessarily makes the act sexual. Did Mr. Helton's counsel and Mr. Helton point to the references? I understand the argument that the guidelines have the to include language,  there's references that any sexual act does not create something that requires registration under SORNA. What's your position in response to that? Because there are a number of those references, and they do create a question, does that somehow maybe include, it's not exclusive, but there's some limitation on the other end of it from that. What's your position on that? Well, Your Honor, I agree that there would have to be some type of limit, and SORNA and the guidelines are clear that it's not all acts that would have a sexual nature. Let's follow that up with your video voyeurism example. That could include taking pictures of genitals. I could buy that argument. What about somebody fully clothed and taking a video of them? I think it would depend, Your Honor, on what they pled to and what the conviction is in the underlying offense. That's why I asked you the question about intent of the act to define the act. Taking a video of you from here, I'm certainly not engaging in voyeurism. Correct, but we're also in a public place. I think in certain cases it might when you're evaluating state offenses to look whether they had a reasonable expectation of privacy versus what occurs in one's home. I'm not saying that's always going to matter, but I think it would depend on how the statute's worded. But for an example of where I think a limit would be public. What about in this particular case, because there is a reasonable expectation of privacy limit in the South Carolina statute? Correct, Your Honor, and I think that's what would differentiate it from Judge Floyd's hypothetical, is that if he would be videoing me here, we are in a public place and I don't have a reasonable expectation of privacy. However, what occurred in Mr. Helton's case and what occurred as far as that underlying conduct for the conviction is, he was looking in the window of Jerome Brown's residence, and there was also multiple people in Mr. Brown's residence. If you look at the witness statement, it was Mr. Brown, his girlfriend, his three-year-old child, along with others. So the fact that he invaded a place where they had a reasonable expectation of privacy, did this viewing with that element that requires it be done for a sexual purpose, that's where we get to the fact that it's a sexual act. Also, Your Honors, as far as the references to 2246, I did want to point out that in SORNA, in 20911, that statute section that we're under, if you look at 5A3, importantly, I think where they're talking about federal offenses, Congress does refer to offenses under Chapter 109A. That's where 2246 is located. And what that indicates to the United States is, they knew that this definition existed when they wrote the statute. They referred to Chapter 109A and included it under federal offenses. No similar limitation was put under 5A1, where the courts are going to be tasked with evaluating a state underlying conviction. And Congress could have easily did so. They were aware of the statute, and they chose not to incorporate it as a limiting definition. And I think that's where the SMART guidelines then came and said, well, at a minimum, it's going to include this. But I did want to answer the prior question that was posed to my opposing counsel, that it does make a reference to, not specifically that individual Section 2246, but it does make reference to Chapter 109A, where that's included. Also, Your Honors, under United States v. Cineris, I would just note that that court in that case held, which is not binding on this court, but it did find that sexual abuse under Chapter 109A was not a definitional provision to other chapters, and specifically in Chapter 110 in that case. So although there is not case law on point, I believe, for this court to follow, that was instructive, and I think that sets up with the statutory interpretation canon that if the terms are used in the same statute, in the same act, they're intended to have the same meaning, but we don't have that here. These are terms that are used in a different section, and it's not the same act. If we don't have a sexual act to trigger a voyeurism statute, aren't we making this a thought crime, kind of like conspiracy? You just think about it? I don't believe, Your Honor, that the thought would constitute the act, because there must be some sort of action connected to it. So if you just think about it without having first the element that you must do an act, so here viewing, photographing, or videoing, and then you couple it with the other element to get the sexual purpose, I believe it crosses the line of being just a thought crime in this case, and I see the judge's concern about how do we differentiate this, and I think it would go down to what the plain and ordinary meaning is of the word act. So there must be, for example, and I'm sorry to use a conspiracy as an example, but there must be some overt act. So the thought of having a criminal agreement is not necessarily always going to be enough, that there has to be some act to follow through. So I would liken it to they might have the sexual thought, but without doing some act to further it, it's not enough. So here I think coupling those two elements, the act of the viewing with the sexual element, that's how we get to sexual act in this case. Now another example, as I was thinking through this and where we set the limits, would be public urination. That could be registrable under some state of crimes. Actually a crime that was charged and tried in the state of South Carolina about a year ago. Okay, so that came to my mind when I'm thinking where do we draw these limits. So with public urination, you would have to have some type of sexual intent when you're doing that. So it can't just be someone who is making a poor decision and urinating in public. It has to be an element coupled with they did it for some sexual gratification or purpose to even get there. So I think perhaps that would be the outer limit of what's not registrable under SORNA, although it could be classified and states could require it to be registered under their state registry. So as I was thinking through examples, that's the one that came to mind of where we would draw that outer limit. Are there any additional questions for the court that I may handle? Thank you very much. Thank you, Your Honors. Mr. Compton. Thank you, Your Honor. That last discussion sort of addressed, I guess, my concern about, you know, if we don't use the SMART guidelines as the definitions, then we end up in a guessing game as to, well, what makes me have to register? The government said that SORNA is a baseline. Well, that's true. It's a baseline, and it allows states to make other offenses under state law registrable as sex offenses. But we're not operating under state law here. This is the federal law. This is SORNA that we're looking at, and the SORNA guidelines, the SMART guidelines, over and over and over again say that 5A1, sexual act and sexual contact, involve touching. Touching. The government also talks about, had made mention of the categorical approach and categorical matches and video voyeurism. If we look at the statute, again, the government has conceded that it's indivisible. The statute, the elements are knowingly viewing. The categorical approach does apply. You agree with that? I agree, Your Honor. I believe the case law is pretty clear on that with regard to its reference to the 5A1 talks about elements. And so I think that's pretty clear under the case law. Knowingly viewing, photographing another without the person's knowledge while in a place of reasonable expectation for the purposes of arousing or gratifying sexual desires. If we look at, as we are proposing the comparable federal definitions, sexual act, sexual contact, that our position is both require touching, then we don't have a categorical match because no element here requires touching. One. Two, the closest federal statute that we may have that the government referenced, the video voyeurism statute. That offense requires capturing of an image. And this statute does talk about photographing, recording, and so on. But it also allows viewing, which is what, in fact, the facts and circumstances of Helton's case were. But just looking at the elements, the second element of viewing sweeps broader than what the closest comparable actual federal statute is, the video voyeurism. And that is also not a categorical match. So I think if we're talking about the categorical approach, then for those two reasons it doesn't fit as well. And I know the government has referenced Section 5A.3. That section talks about federal convictions. 5A.1 is making reference to state convictions, and that's the section that we're dealing with here. All the parties concede that that's the one that applies. And I think it's not a proper analysis to refer to that and say, well, you know, they mentioned Chapter 109 there, so they knew they could have, Congress knew they could have had to do it in 5A.1. Congress didn't do it for whatever reason. And they left it to the Attorney General through the SMART guidelines to do it. And what is interesting is, is that the SMART guidelines, of all the things Congress could have said, what did they do? They referred back to 2246. So I think in context here, if you look at the whole picture, it seems clear to me that the Attorney General has chosen to define sexual act and sexual contact as involving touching and has made reference to that throughout the SMART guidelines. I believe that the government's position that sexual act equals anything of a sexual nature is incorrect. But the SMART guidelines, I think, say so. And for those reasons, we believe that the court here should find that the district court erred, vacate Mr. Helton's conviction and sentence, and remand this case for further proceedings with instructions to dismiss the indictment. Okay. Thank you very much. Thank you. Thank you, counsel's argument. And I'll ask, we're going to come down and greet counsel, but I'd first ask the clerk to adjourn court sine die. This honorable court stands adjourned sine die. God save the United States and this honorable court.
judges: G. Steven Agee, Henry F. Floyd, A. Marvin Quattlebaum Jr.